KAB

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eulandas J. Flowers, | No. CV 14-08184-PCT-JAT (ESW) |
| Plaintiff, | |
| v. | **ORDER** |
| Sandra Lawrence, et al., | |
| Defendants. | |

Plaintiff Eulandas J. Flowers, who is currently confined in Arizona State Prison Complex-Eyman, brought this civil rights case pursuant to 42 U.S.C. § 1983. (Doc. 26.) Pending before the Court are (1) a Report and Recommendation ("R&R") from the Magistrate Judge (Doc. 87) recommending that Plaintiff's Motion for Leave to File an Amended Complaint (Doc. 79) be denied and that Defendant Batchlor be dismissed due to Plaintiff's failure to serve and failure to respond to the Court's Order to Show Cause and (2) Defendants' Motion for Summary Judgment Based on Plaintiff's Failure to Administratively Exhaust his Claims and Alternative Motion for Judgment on the Pleadings on Count II (Doc. 58), which Plaintiff opposes (Docs. 80, 81).[1]

### I.    Background

On screening Plaintiff's First Amended Complaint (Doc. 26) under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated a claim and directed Defendants

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) regarding the requirements of a response. (Doc. 61.)

Young, Batchlor, and Marshall to respond to the Eighth Amendment excessive force and failure to intervene claims in Count One and Defendants Lawrence, Contreas, Marshall, Coleman, Young, Dean, Shane, and Batchlor to respond to the Eighth Amendment deliberate indifference claim and the claim for violation of the Arizona Constitution, Article 2 in Count Two  (Docs. 19, 27.)  The Court dismissed the remaining claims and Defendants.  (*Id.*)

## II. The Report and Recommendation

### A. Legal Standard

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  It is "clear that the district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise."  *United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc); *accord Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) ("Following *Reyna–Tapia*, this Court concludes that *de novo* review of factual and legal issues is required if objections are made, 'but not otherwise.'"); *Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, 589 F.3d 1027, 1032 (9th Cir. 2009) (the district court "must review de novo the portions of the [magistrate judge's] recommendations to which the parties object.").  District courts are not required to conduct "any review at all . . . *of any issue* that is not the subject of an objection."  *Thomas v. Arn*, 474 U.S. 140, 149 (1985) (emphasis added); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the [R & R] to which objection is made.").

### B. Motion to Amend

The Magistrate Judge recommended denying the Motion to For Leave to File an Amended Complaint as untimely and for failure to comply with Local Rules of Civil Procedure 3.4 and 15.1(a).  (Doc. 87.)  Plaintiff filed an Objection to that part of the Magistrate Judge's Report and Recommendation.  Plaintiff asserts that he was not aware of Local Rules 3.4 and 15.1(a) and that the Court should freely grant leave to amend the

1 complaint. (Doc. 99.) The Court will review the Motion to Amend de novo.

2 Plaintiff filed a "Motion for Leave to File an Amended Complaint", but did not attach a copy of the proposed second amended complaint. (Doc. 79.) In his Motion, Plaintiff requests that "the Arizona Constitution, Art. 2 violation be removed from 1st amended complaint." (*Id.* at 1.)

Plaintiff argues that the Court should freely grant leave to amend the complaint, referring to Federal Rule of Civil Procedure 15(a). Plaintiff, however, overlooks the fact that he also seeks to amend the Scheduling Order, which set a deadline to file all motions to amend by September 8, 2015. (Doc. 49.) Pursuant to Rule 16 of the Federal Rules of Civil Procedure, a scheduling order may not be revised except upon a showing of good cause. Here, Plaintiff has not shown good cause to amend the Scheduling Order and cannot even meet Rule 15(a)'s more liberal standard because there has been undue delay and amending the complaint would be futile. *See W. Shoshone Nat'l Council v. Molini*, 951 F.2d 200, 204 (9th Cir. 1991) (when determining whether leave to amend should be granted under Rule 15(a), the Court considers (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of the amendment; and (5) whether plaintiff has previously amended its complaint.) Here, Defendants have sought summary judgment and judgment on the pleadings as to Plaintiff's claim for a violation of Article 2 of the Arizona Constitution. It is not necessary for Plaintiff to amend his complaint in order to concede that judgment is appropriate as to that claim.

Finally, Plaintiff's argument that he was unaware of Local Rules 3.4 and 15.1(a) is not an excuse for failure to comply with those rules and, as a result, Plaintiff's Motion could be denied on that basis alone. *See, e.g.*, *Carter v. C.I.R.*, 784 F.2d 1006, 1008 (9th Cir. 1986) (a pro se litigant must "abide by the rules of the court in which he litigates.").

For all of the foregoing reasons, Plaintiff's "Motion for Leave to File an Amended Complaint" (Doc. 79) is denied and Plaintiff's objections to the Report and Recommendation are overruled.

. . . .

### C. Failure to Serve Defendant Batchlor

The Magistrate Judge's Report and Recommendation also recommends dismissal of Defendant Batchlor without prejudice because of Plaintiff's failure to serve Defendant Batchlor. Although Plaintiff did not object to this portion of the Magistrate Judge's Report and Recommendation, because the Magistrate Judge did not discuss the factors necessary for a dismissal under Rule 41(b) of the Federal Rules of Civil Procedure, the Court will analyze whether dismissal is appropriate under Rule 41(b).

#### 1. Background

Plaintiff was granted leave to file his First Amended Complaint on April 1, 2015, and was required to obtain a waiver of service or complete service within 120 days of the filing of the First Amended Complaint. (Doc. 27.)[2] On January 8, 2016, the Court ordered Plaintiff to show cause why the action should not be dismissed as to Defendant Batchlor for failure to serve. (Doc. 75.) Plaintiff did not respond to the Order to Show Cause.

#### 2. Legal Standard

"A Rule 41(b) dismissal 'must be supported by a showing of unreasonable delay.'" *Omstead v. Dell, Inc.*, 594 F.3d 1081, 1084 (9th Cir. 2010) (quoting *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986)). "In addition, the district court must weigh the following factors in determining whether a Rule 41(b) dismissal is warranted: '(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits and (5) the availability of less drastic sanctions.'" *Omstead*, 594 F.3d at 1084 (quoting *Henderson*, 779 F.2d at 1423). Dismissal is permitted "where at least four factors support dismissal, or where at least three factors 'strongly' support dismissal." *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998) (internal citations omitted).

---

[2] The U.S. Marshals Service attempted service on Defendant Batchlor, but filed a Process Receipt Return indicating that it was unable to complete that service with the information provided. (Doc. 46, Doc. 75 n.1.)

- 4 -

### 3. Discussion

Plaintiff's failure to serve Defendant Batchlor for over eight months without explanation constitutes undue delay. Moreover, four of the five *Henderson* factors support dismissal. First, "[t]he public's interest in expeditious resolution of litigation always favors dismissal." *Yourish v. California Amplifier*, 191 F. 3d 983, 990 (9th Cir. 1999). Second, the Court cannot manage this case and its docket if Plaintiff refuses to comply with its Orders to serve Defendant Batchlor or to show cause why Defendant Batchlor should not be dismissed. Third, Plaintiff must rebut a presumption of prejudice that arises from Plaintiff's failure to prosecute with a non-frivolous excuse for the delay. *See Hernandez*, 138 F.3d at 400-401. Because Plaintiff has offered no excuse for his delay, this factor weighs against Plaintiff. With regard to the fourth factor, the public policy favoring resolution of cases on their merits weighs in Plaintiff's favor. The fifth factor favors dismissal where, as here, the Court has attempted to allow Plaintiff to serve Defendant, has given Plaintiff chances to explain why dismissal is inappropriate or why he has not served Defendant Batchlor, and Plaintiff has not done so. The only less drastic sanction to dismissal with prejudice, is dismissal without prejudice. Accordingly, the Court finds that Defendant Batchlor should be dismissed without prejudice.

The Magistrate Judge's Report and Recommendation will be accepted as modified herein.

### III. Motion for Summary Judgment

Defendants Coleman, Contreras, Dean, Lawrence, Marshall, Shane, and Young argue that they are entitled to summary judgment on Plaintiff's claims because Plaintiff failed to properly exhaust his available administrative remedies.

Defendants alternatively argue that they are entitled to judgment on the pleadings on Plaintiff's claim for a violation of Article 2 of the Arizona Constitution under Rule 12(c) of the Federal Rules of Civil Procedure.

As a preliminary matter, in Response to Defendants' argument that they are entitled to judgment on the pleadings as to Plaintiff's claim regarding a violation of

1 Article 2 of the Arizona Constitution, Plaintiff asserts that he filed a motion for leave to
2 amend his First Amended Complaint "to remove the violation of "Arizona Constitution[]
3 Art. 2 from Count II." (Doc. 80.) As such, Plaintiff concedes that the claim related to a
4 violation of Article 2 of the Arizona Constitution in Count Two should be dismissed and
5 the Court will dismiss that claim.

### A. Legal Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*,

477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

### B. Legal Standard for Exhaustion

Under the Prison Litigation Reform Act, a prisoner must exhaust "available" administrative remedies before filing an action in federal court. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005). The prisoner must complete the administrative review process in accordance with the applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it. *Albino v. Baca*, 747 F.3d 1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936-37 (a defendant must demonstrate that applicable relief remained available in the grievance process). Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. The ultimate burden, however, rests with the defendant. *Id.* Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

If summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge; a plaintiff is not entitled to a jury trial on the issue of exhaustion. *Albino*, 747 F.3d at 1170-71. But if a court finds that the prisoner exhausted administrative remedies, that administrative remedies were not available, or that the

1 failure to exhaust administrative remedies should be excused, the case proceeds to the
2 merits. *Id.* at 1171.

### C. Arizona Department of Corrections (ADC) Grievance Procedure

The Motion for Summary Judgment includes a copy of Department Order (DO) 802, *Inmate Grievance Procedure*, which governs the ADC grievance policy. (Doc. 59-1 at 3-15.) The first step in resolving a complaint is, within ten workdays of the action which caused the complaint, for the inmate to discuss the issue with staff in the area most responsible for the complaint or through submission of an Informal Complaint Resolution Form. (DO 802.02, *Id.* at 5-6.) If an inmate is unable to informally resolve the complaint, the inmate must submit the Informal Complaint Resolution form to the CO III in their unit; a response must be provided in 15 days. (*Id.*) If the inmate is dissatisfied with the response, he may submit a formal grievance. (*Id.* at 6.)

For non-medical claims, the inmate may file a formal grievance within five workdays from the receipt of the response to the Grievance Coordinator. (DO 802.03, *Id.* at 6.) Within 15 workdays, the Deputy Warden shall issue a written response to the inmate. (*Id.*) Within 5 workdays, the inmate may appeal the decision to the Warden. (DO 802.04, *Id.* at 6-7.) Within 20 workdays, the Warden shall issue a written response. (*Id.* at 7.) Within 5 workdays from the Warden's response, the inmate may appeal to the Director. (DO 802.05, *Id.* at 7.) The decision of the Director is final and constitutes exhaustion of all remedies within the Department. (*Id.*)

For medical grievances, the inmate may file a formal grievance if unable to resolve the complaint informally within five workdays from the response to the informal grievance. (DO 802.06, *Id.* at 7.) Within fifteen workdays, the Facility Health Administrator must prepare a response to the grievance. (*Id.*) Within five workdays from the response, the inmate may appeal to the Director. (DO 802.07, *Id.* at 8.) The decision of the Director is final and constitutes exhaustion of all remedies within the Department. (*Id.* at 9.)

. . . .

**D. Facts**

In his First Amended Complaint, Plaintiff alleges that on April 1, 2014, he was assaulted by Defendants Young and Marshall and that Batchlor failed to intervene. (Doc. 26.) Plaintiff further alleges that from March 26, 2014 through April 6, 2014, while Plaintiff was on defecation watch, Defendants Lawrence, Contreas, Marshall, Coleman, Young, Dean, Shane, and Batchlor denied Plaintiff basic necessities and medical care. (*Id.*)

From April 1, 2014 to April 6, 2014, Plaintiff was housed in the Kaibab Unit at ASPC-Winslow. (*Id.*) On March 26, 2014, Plaintiff was assigned to defecation watch. (Doc. 59 ¶ 57.) While on defecation watch, inmates are allowed no personal property and are required to eliminate in a container, rather than a toilet, so that whatever contraband they pass may be retrieved by staff. (*Id.* ¶ 58.) On April 5, 2014, Plaintiff was released from defecation watch and returned to regular maximum custody detention status. (*Id.* ¶ 61.) In maximum custody, inmates have access upon request to writing materials, golf-style pencils or pen fillers, and standard forms, including inmate letters, informal resolutions, and inmate grievances. (*Id.*) The Deputy Warden of the Kaibab Unit, Defendant Lawrence, received three Inmate Letters from Plaintiff between April 15, 2014 and April 18, 2014 regarding Plaintiff's refusal to be handcuffed, but asserts that she received no complaints, letters, or grievances from Plaintiff regarding the alleged April 1st staff assault or the denial of necessities and medical care from March 26th through April 6th. (*Id.* ¶ 63.) CO III Spears, who was Plaintiff's case worker from April 3, 2014 to April 21, 2014 does not recall Plaintiff ever requesting forms or pencils and has been unable to locate any paperwork Plaintiff filed during that time. (*Id.* ¶¶ 38-43.)

Plaintiff was moved to the maximum-custody Browning Unit at ASPC-Eyman on April 21, 2014. (*Id.* ¶ 68.) On June 1, 2014, Plaintiff submitted an Informal Complaint Resolution to CO III Buchholtz in which he alleged that he was assaulted by security staff on April 1, 2014 at the Kaibab Detention Unit at ASPC-Winslow. (*Id.* ¶ 77.) On July 9, 2014, Plaintiff submitted an Inmate Grievance regarding the alleged April 1

1 assault. (*Id.* ¶ 78). CO III Bendell returned the July 9 Inmate Grievance to Plaintiff, noting "Unprocessed. Well out of time frames. Arrived at unit and submitted an informal 41 days later. Per policy DO 802 unprocessed." (*Id.* ¶ 79.) On July 13, 2014, Plaintiff submitted an Inmate Letter asserting that he was within time frames because he had been issued his property on May 21, 2014 and filed his Informal on June 1. (*Id.* ¶ 80.) Plaintiff submitted a second Inmate Grievance on July 14, 2014, which was duplicative of the July 9 grievance, and CO III Bendell returned it to Plaintiff again noting that it was out of time frames. (*Id.* ¶¶ 81-82.)

Plaintiff asserts that he "had video recorded emergency grievances and written emergency grievances on April 16, 2014 and April 20, 2014." (Doc. 81 at 2.) Plaintiff further states that Sergeant Johnson allowed Plaintiff to "orally file an emergency grievance during April 2nd through April 4, 2014." (*Id.* at 5.) Plaintiff asserts that the oral statements included excessive use of force, lack of medical care, and the deprivation of basic necessities "as documented on video (4/04/14 video record #15, #16)." (*Id.*) Plaintiff asserts that Johnson told him that he was not allowed to have writing utensils and grievance forms during defecation watch, so he was to document his oral emergency grievance on video recording. (*Id.*) Plaintiff asserts that he never received a response from the warden. (*Id.*) Plaintiff asserts that on April 16, 2014, he handed CO III Spears an Emergency Grievance on notebook paper, but Plaintiff never received a response from the Warden. (*Id.*) Plaintiff asserts that on April 20, 2014, Plaintiff sent Defendant Lawrence and Warden Larson Emergency Grievances on Inmate Letters describing the April 1 assault and lack of medical care and deprivation of basic necessities. (*Id.* at 6.)

Plaintiff further states that DO 802.09.1.3.1 allows family members to file grievances and that on April 16, 2014, his father filed a grievance on his behalf. (*Id.*)

Finally, Plaintiff asserts that he never received a response to his June 1, 2014 Informal Resolution and, even after he explained "extenuating circumstances," his July 9, 2014 grievance was returned as unprocessed. (*Id.* at 7.)

Defendants deny that Plaintiff spoke to Johnson about filing an emergency

grievance and assert that if Plaintiff told Johnson he wanted to pursue an emergency grievance, Johnson would have told Plaintiff to speak to his assigned CO III case worker. (Doc. 106 ¶¶ 11-19.) Defendants assert that on April 4, not on April 2, Deputy Warden Lawrence and Lieutenant Vogel brought a video camera to Plaintiff's cell to allow Plaintiff to "document his situation for his family so they would understand why he was resigned to dying in his cell." (*Id.* ¶¶ 11-12, 18.) Defendants assert that Spears did not receive any emergency grievance or other written paperwork from Plaintiff between April 3 through April 21, 2014. (Doc. 59 ¶¶ 41-43.) Defendants assert that Plaintiff did not send emergency grievances to DW Lawrence and Warden Larson on April 20, 2014. (Doc. 106 ¶¶ 28-31.)

Defendants argue that Plaintiff's allegations are unsupported by evidence[3] and that Plaintiff did not qualify to file an emergency grievance under DO 802.09, and thus, Plaintiff could not have exhausted by filing such a grievance. Defendants further argue that Plaintiff's father could not have exhausted under DO 802.09 § 1.3.1, as that section applies only to allegations of sexual abuse.

### E.     Discussion

Defendants argue that because Plaintiff failed to initiate the grievance process as to the assault within the published timeframes and failed to ever initiate the grievance process as to his denial of necessities and medical care claim, he failed to properly exhaust available administrative remedies.

---

[3] Defendants repeatedly refer to Plaintiff's claims that he filed certain grievances as "speculative evidence." It is unclear how events in Plaintiff's own personal knowledge qualify as speculative evidence. Many of Defendants' objections are on the grounds that Plaintiff's asserted facts are untrue. To the extent that Defendants disagree with Plaintiff's sworn statement, which is evidence supporting his version of the events—indeed, evidence that must be taken as true at summary judgment, those disagreements constitute argument, not grounds for objecting to a fact as untrue. *See Anderson*, 477 U.S. at 255. As such, all of Defendants' objections to Plaintiff's testimony in his personal knowledge are overruled. *See* Fed. R. Civ. P. 56(c)(4) (sworn statement used to oppose a motion must be made on personal knowledge and set out facts that would be admissible in evidence).

In Response, Plaintiff argues that he was not required to exhaust to the Director's level because he sufficiently exhausted his claims on several occasions.

There is no dispute that Plaintiff did not properly exhaust his claims to the Director's level as required by the ADC's grievance policy. Accordingly, the issue is whether there is something particular in this case that made the existing and generally available administrative remedies effectively unavailable to Plaintiff. Plaintiff argues that he attempted to exhaust his administrative remedies on several occasions and that those attempts should constitute exhaustion. The Court will discuss each of Plaintiff's alleged attempts at exhaustion.

Plaintiff states that Sergeant Johnson allowed Plaintiff to "orally file an emergency grievance during April 2nd through April 5, 2014" regarding excessive use of force, lack of medical care, and the deprivation of basic necessities pursuant to DO 802.09.1.4.1 as documented by video. (Doc. 81 at 5.) Plaintiff asserts that Johnson told him that he was not allowed to have writing utensils and grievance forms during defecation watch, so he was to document his oral emergency grievance on video recording. (*Id.*)

Although the Court agrees with Defendants that DO 802.09, which sets out the procedure for "sexual offense" grievances, has no application to Plaintiff and could not have constituted proper exhaustion of Plaintiff's claims, there is a disputed issue of fact as to whether Plaintiff was allowed to record an emergency grievance via video recording while he was on defecation watch. Although DO 802.09 does not apply to Plaintiff, if Johnson told Plaintiff that he could file an emergency grievance through the video recording, Plaintiff could have relied on that assertion and believed that he was properly exhausting in that manner. *See Brown*, 422 F.3d at 937 (evidence of what remedies were available include directives and information provided to the prisoner about the operation of the grievance procedure). While the Court recognizes that Defendants deny that the video recording was for the purpose of filing a grievance and deny Plaintiff's other claims, those denials simply result in a factual dispute that cannot be resolved on summary judgment.

Plaintiff next asserts that on April 16, 2014, he handed CO III Spears an Emergency Grievance on notebook paper, but Plaintiff never received a response from the Warden. Plaintiff further asserts that on April 20, 2014, Plaintiff sent Defendant Lawrence and Warden Larson Emergency Grievances in Inmate Letters describing the April 1 assault and lack of medical care and deprivation of basic necessities. (*Id.* at 6.) Defendants deny receiving any such grievances.

Even if Plaintiff submitted such grievances, he does not make any allegations that CO III Spears, Lawrence, or Larson led Plaintiff to believe that he could deviate from the standard grievance procedure by handing in an "Emergency Grievance" on notebook paper or by filing "Inmate Letters" that should have been construed as emergency grievances. As discussed above, the emergency grievance procedure in DO 802.09.1.4 does not apply to Plaintiff's claims. Further, although DO 802.01.1.8 has a section for emergency complaints, that section provides that "an emergency is a condition which, if processed through the normal grievance time frames, would subject the inmate to substantial risk of medical harm, personal injury or cause other serious and irreparable harm." DO 802.01.1.8.1. Plaintiff has provided no evidence that on April 16 or April 20, he had an emergency meeting that definition that would excuse him from following the standard grievance procedure.

Moreover, Plaintiff has not produced any evidence that any Defendants led him to believe that the April 16th or April 20th "grievances" were sufficient to exhaust his claims. As such, Plaintiff has failed to show that there is a disputed issue of material fact with regard to the April 16th and April 20th grievances, and the evidence in the Record shows that Plaintiff did not properly exhaust his available administrative remedies via the April 16th and April 20th "grievances."

Plaintiff further argues that because DO 802.09.1.3.1 allows family members to file grievances, he properly exhausted when, on April 16, 2014, his father filed a grievance on his behalf. As discussed above, because DO 802.09 applies to sexual offense grievances, it does not apply to Plaintiff's claims and Plaintiff could not have

properly exhausted by using a provision of DO 802.09.

Plaintiff finally argues that he attempted to properly exhaust when he filed his June 1, 2014 Informal Complaint Resolution after he was transferred to ASPC-Eyman and that he qualified for an extenuating circumstances exception to the time frames requirement because he explained that he was not issued his property after his move until May 21, 2014.

Plaintiff's argument fails for several reasons. Plaintiff must properly comply with the ADC's grievance procedure to properly exhaust. There is no dispute that his June 1, 2014 Informal Complaint and July 9, 2014 grievance were well out of the time frames for submitting any grievance as provided by the Inmate Grievance Procedure. Plaintiff's argument that he needed his property before he could file a grievance does not justify his failure to comply with the time frames. Plaintiff does not explain why he needed his property to grieve the assault and denial of necessities and medical care claim,[4] which were facts in his personal knowledge. Moreover, Plaintiff does not explain why he did not attempt to grieve prior to his transfer and the packing of his property. As such, the June 1 and July 9 grievances could not have constituted proper exhaustion.

Accordingly, there is a materially disputed issue as to whether Plaintiff exhausted between April 2 and April 5 through the filing of a videotape emergency grievance allowed by Sergeant Johnson.[5] The remainder of Plaintiff's arguments as to exhaustion fail and will not be further considered by the Court. Because there are disputed factual questions that must be resolved before the Court can conclude whether Plaintiff

---

[4] Notably, Plaintiff did not even attempt to grieve the denial of necessities and medical care claim in the June 1 and July 9 grievances.

[5] The material factual disputes are whether Sergeant Johnson told Plaintiff that he could orally file an emergency grievance via videotape while Plaintiff was on defecation watch, whether Plaintiff relied on that alleged assertion to believe that he was properly exhausting and did not need to follow the general grievance process, and whether Plaintiff made such a recording of his grievances relating to his claims of assault and denial of medical care and necessities.

exhausted his administrative remedies that cannot be resolved on a Motion for Summary Judgment, Defendants' Motion for Summary Judgment as to exhaustion will be denied.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment Based on Plaintiff's Failure to Administratively Exhaust his Claims and Alternative Motion for Judgment on the Pleadings on Count II (Doc. 58).

(2) The Magistrate Judge's Report and Recommendation (Doc. 87) is **ACCEPTED AS MODIFIED** above.

(3) Plaintiff's "Motion for Leave to File an Amended Complaint" (Doc. 79) is **denied**.

(4) Defendant Batchlor is **dismissed without prejudice**.

(5) Defendants' Motion for Summary Judgment Based on Plaintiff's Failure to Administratively Exhaust his Claims and Alternative Motion for Judgment on the Pleadings on Count II (Doc. 58) is **granted in part and denied in part as follows:**

    (a) Plaintiff's claim for a violation of Article II of the Arizona Constitution in Count Two is **dismissed**.

    (b) Defendants' Motion for Summary Judgment Based on Plaintiff's Failure to Administratively Exhaust his Claims is **denied**.

(6) Within 20 days of the date of this Order, Defendants shall file a motion requesting that the Court set an evidentiary hearing as to exhaustion or a motion to withdraw their request to dismiss this case on exhaustion grounds.

Dated this 25th day of April, 2016.

James A. Teilborg
Senior United States District Judge