WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eulandas J Flowers,<br><br>        Plaintiff,<br><br>v.<br><br>Sandra Lawrence, et al.,<br><br>        Defendants. | No. CV-14-08184-PCT-JAT (ESW)<br><br>**ORDER** |

On April 25, 2016, the Court denied Defendants' motion for summary judgment on the issue of whether Plaintiff Eulandas J. Flowers failed to exhaust his available administrative remedies in accordance with the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) (2012) (the "PLRA"). (Doc. 109). The Court thereafter set for trial the issue of exhaustion, (Doc. 116), which was held on June 16, 17, and August 2, 2016. The Court hereby finds and concludes the following.

### I.     Legal Standard

Under the PLRA, a prisoner must exhaust "available" administrative remedies before filing an action in federal court. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005). The prisoner must complete the administrative review process in accordance with the applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523 (2002),

regardless of the type of relief offered through the administrative process. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it. *Albino v. Baca*, 747 F.3d 1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936-37 (a defendant must demonstrate that applicable relief remained available in the grievance process). Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. The ultimate burden, however, rests with the defendant. *Id*.

## II.   Findings of Fact

Prior to setting forth the findings of fact, the Court must reiterate exactly what the disputed issues of material fact were that necessitated a bench trial on the issue of exhaustion: (1) "whether Sergeant [(now Lieutenant) Jason] Johnson told Plaintiff that he could orally file an emergency grievance via videotape while Plaintiff was on defecation watch"; (2) "whether Plaintiff relied on that alleged assertion to believe that he was properly exhausting and did not need to follow the general grievance process"; and (3) "whether Plaintiff made such a recording of his grievances relating to his claims of assault and denial of medical care and necessities." (Doc. 109 at 14 n.5). The Court will restrict its findings and conclusions to the disputed factual issues previously identified as material.

The Arizona Department of Corrections ("ADOC") provides a grievance procedure to all incarcerated inmates,[1] including Plaintiff. This procedure permits inmates to bring to the attention of ADOC problems or complaints so that they may be

---

[1] The record includes a copy of Department Order (DO) 802, *Inmate Grievance Procedure*, which governs the ADOC grievance policy. (Doc. 59-1 at 3-15.)

1  investigated, substantiated, and resolved. The first step in resolving a complaint is, within
2  ten workdays of the action which caused the complaint, for the inmate to discuss the issue
3  with staff in the area most responsible for the complaint or through submission of an
4  Informal Complaint Resolution Form. (DO 802.02, *Id.* at 5-6). If an inmate is unable to
5  informally resolve the complaint, the inmate must submit the Informal Complaint
6  Resolution form to the CO III in their unit; a response must be provided in 15 days. (*Id.*).
7  If the inmate is dissatisfied with the response, he may submit a formal grievance. (*Id.* at
8  6).

   For non-medical claims, the inmate may file a formal grievance within five
10 workdays from the receipt of the response to the Grievance Coordinator. (DO 802.03, *Id.*
11 at 6). Within 15 workdays, the Deputy Warden shall issue a written response to the
12 inmate. (*Id.*). Within 5 workdays, the inmate may appeal the decision to the Warden. (DO
13 802.04, *Id.* at 6-7). Within 20 workdays, the Warden shall issue a written response. (*Id.* at
14 7.). Within 5 workdays from the Warden's response, the inmate may appeal to the
15 Director. (DO 802.05, *Id.* at 7). The decision of the Director is final and constitutes
16 exhaustion of all remedies within the Department. (*Id.*).

   For medical grievances, the inmate may file a formal grievance if unable to
18 resolve the complaint informally within five workdays from the response to the informal
19 grievance. (DO 802.06, *Id.* at 7). Within fifteen workdays, the Facility Health
20 Administrator must prepare a response to the grievance. (*Id.*). Within five workdays from
21 the response, the inmate may appeal to the Director. (DO 802.07, *Id.* at 8). The decision
22 of the Director is final and constitutes exhaustion of all remedies within the Department.
23 (*Id.* at 9).

   From at least March 26, 2014, through April 21, 2014, Plaintiff was housed in the
25 Kaibab Unit at ASPC-Winslow. On March 26, 2014, Plaintiff was assigned to defecation
26 watch upon suspicion of possessing contraband. While on defecation watch, inmates are
27 allowed no personal property and are required to eliminate in a container, rather than a
28 toilet, so that whatever contraband they pass may be retrieved by staff. On April 5, 2014,

Plaintiff was released from defecation watch and returned to regular maximum custody detention status. In maximum custody, inmates have access upon request to writing materials, golf style pencils, and standard forms, including inmate letters, informal resolutions, and inmate grievances.

Nowhere in the ADOC regulations does it state that an individual may file an informal or formal grievance by utilizing a video camera or a prison facility's closed circuit camera system.

### III.    Analysis and Conclusions of Law

As previously noted, the burden lies with Defendants to establish that Plaintiff failed to exhaust available administrative remedies prior to filing suit in federal court. *Albino*, 747 F.3d at 1172. Plaintiff argument, as evinced from his testimony at the bench trial, is that Sgt. Johnson informed him that while he was on defecation watch, he could file a grievance by speaking into a video camera that had been installed in front of his cell window. Thus, Plaintiff contends, he was led to reasonably believe that he could comply with ADOC grievance procedures by "grieving" into the camera. The Court finds that Plaintiff is not a credible witness with respect to this issue.[2]

Sgt. Johnson testified at trial that as of April 2014, he was a Correctional Officer ("CO") II assigned to the Kaibab Unit and was working overtime as a floor officer. Sgt. Johnson further testified that he did not set up the video camera in front of Plaintiff's cell, he did not have authority to set up the video camera, he did not order or ask any other CO to set up the video camera, and that once he was aware of the presence of the video camera, he did not tell Plaintiff anything about the purpose of the camera, and he did not tell Plaintiff that he could file any kind of grievance by speaking into the camera. Sgt. Johnson continued by testifying that it was Deputy Warden Sandra Lawrence who authorized the installation of the video camera, and that it was Lieutenant Vogel who was

---

[2] The rationale supporting the Court's credibility finding is set forth *infra*.

- 4 -

in physical possession of the camera and brought it to Plaintiff's cell. The Court finds Sgt. Johnson's testimony on this issue to be credible. The pertinent testimony was clear, direct, unequivocal, and unwavering. Furthermore, his testimony on the issue was corroborated by that of Deputy Warden Lawrence,[3] who directed Lt. Vogel to bring the camera and install it in front of Plaintiff's cell.

Plaintiff has failed to proffer evidence diminishing the veracity of Sgt. Johnson's testimony on this central issue. No documentary evidence indicates that Sgt. Johnson informed Plaintiff that the video camera could be used to file a grievance. Sgt. Johnson denied under oath ever having told Plaintiff he could grieve via the video camera. None of the video footage[4] contained any evidence to suggest Sgt. Johnson led Plaintiff to

---

[3] The Court acknowledges that Deputy Warden Lawrence's testimony does not align perfectly with Defendants' stated position, that Plaintiff requested the video camera to document his situation. Deputy Warden Lawrence testified that she directed Lt. Vogel to bring the video camera to Plaintiff's cell because "of the behavior that [Plaintiff] was exhibiting." The Deputy Warden wanted to ensure that "there was no foul play" regarding the contraband Plaintiff may have had in his possession. This testimony suggests that it was the Deputy Warden, and not Plaintiff who orchestrated the deployment of the video camera. But the Court finds that her testimony does not conflict with the evidence, which showed Plaintiff—on multiple occasions—stating into the video camera that he had requested the video camera to document his situation. Plaintiff's and the Deputy Warden's motives were not in opposition to one another. It is therefore an eminently reasonable inference—supported by evidence—to find that the video camera would permit both Plaintiff to document his status, and the Deputy Warden to ensure the integrity of ADOC's process to separate contraband from a prisoner who had been noncompliant. And with respect to the central issue—whether Sgt. Johnson ever led Plaintiff to reasonably believe that he could utilize the video camera to initiate a grievance—there is no discrepancy. All testimony and evidence provided by Defendants support their position that they never communicated to Plaintiff that he could grieve via the video camera in front of his cell.

[4] The Court Ordered Plaintiff to identify in advance of the last day of the bench trial the portions of twenty-seven hours of recorded video that he believed supported his position. (Doc. 155). Plaintiff submitted a list of nineteen video excerpts totaling approximately one hour worth of footage. (Doc. 170). These nineteen video excerpts were viewed in Court on August 2, 2016. (Doc. 173).

believe he could rely on "filing" a video grievance to comply with ADOC regulations.[5] The record contains numerous formal and informal grievances filed by Plaintiff between April 15, 2014 and July 14, 2014, none of which discuss or even allude to a previous "video" grievance. CO III Christopher Spears[6]—a daily point of contact for Plaintiff through which he could initiate the grievance process—also testified that he had never heard of a video grievance, and that even when Plaintiff was on defecation watch, pencils and grievance forms were available to him.[7]

Plaintiff's assertion thus rests on his own testimony, and as the Court previously noted, it does not find Plaintiff to be credible on the issue of whether Sgt. Johnson informed him that he could utilize the installed video camera to initiate the grievance process. The Court's credibility finding rests in large part on contradictory statements made by Plaintiff in the video recordings viewed in Court. In the video recordings, on multiple occasions, Plaintiff explicitly stated that he asked for the video camera to be

---

[5] Plaintiff asserted in a July 21, 2016, brief that the video footage turned over to him by Defendants did not include the video of his "initial" emergency grievance. (Doc. 170). Plaintiff, however, did not assert that this allegedly missing video contained any evidence supporting his assertion that Sgt. Johnson informed Plaintiff that he could rely on the video camera in front of his cell to file a grievance and satisfy ADOC grievance regulations. Defendants have denied its existence, asserting that they turned over to Plaintiff all available video footage.

[6] The Court finds CO III Spears to be a credible witness. This credibility finding is based on Spears' consistent testimony through both direct and cross-examination at trial, in addition to his demeanor and disposition while on the stand. Disciplinary and Grievance Appeals Officer Cheryl Dossett, and Deputy Warden Lawrence also testified that they had never heard of or considered any kind of video grievance in their time with ADOC.

[7] Although ADOC regulations preclude inmates from possessing personal property while they are on defecation watch, CO III Spears testified that he was available to provide Plaintiff with the necessary paperwork and tools to file a grievance. Spears further testified as to the utility of the "golf pencils" he carried, noting that they were disposable. Plaintiff could have asked CO III Spears for a golf pencil and the forms, Spears would slide the pencil and paperwork to Plaintiff, and upon their return, simply dispose of the golf pencil.

installed, and that he wanted the video camera installed to document his deteriorating situation for his family. This evidence stands in stark contrast to Plaintiff's position throughout the proceedings, which was that Sgt. Johnson "told him that he was not allowed to have writing utensils and grievance forms during defecation watch, so he was to document his oral emergency grievance on video recording." (Doc. 109 at 10). Plaintiff's assertion is further undercut by CO III Spears' credible testimony that he was available to give Plaintiff grievance forms and writing utensils while he was on defecation watch and by Sgt. Johnson's credible testimony that he never told Plaintiff he could use the video camera to orally file a grievance. In light of these contradictions, Plaintiff's credibility on the central issue is diminished significantly.

Moreover, there is a dearth of evidence to support Plaintiff's contention. In the video recordings, there is no indication or even suggestion that Plaintiff had been led to believe that he could initiate a grievance by speaking into the camera. No testimonial or documentary evidence supports Plaintiff's claims. Finally, Plaintiff acquitted himself very well throughout this matter. He possessed a firm grasp of both the facts of his case and the written law. He demonstrated the ability to present issues clearly and cogently, attack weaknesses in his opponents' argument, and rely on specific portions of the record to support his position. His familiarity with the ADOC grievance process and his competence with documentary evidence and his own case suggest that he was well aware of the ADOC grievance process in place in April of 2014. For these reasons, the Court finds that Plaintiff was not a credible witness when he asserted that Sgt. Johnson reasonably led him to believe that he could comply with ADOC regulations and file a grievance via the video camera placed in front of his cell.[8]

---

[8] As the Court noted in its Order granting in part and denying in part Plaintiff's summary judgment motion, the disputed issue of material fact was whether *Sgt. Johnson* led Plaintiff to believe he could file a video grievance. Even expanding the analysis to include every individual involved in the events that gave rise to this action, nothing suggests that Defendants informed Plaintiff that he could use the video camera to initiate a grievance.

Having resolved the first disputed material fact in Defendants' favor, the Court need not resolve the second and third disputed facts. Given the Court's negative credibility determination with respect to Plaintiff, and in light of evidence proffered by Defendants, the Court finds that Defendants have carried their burden and demonstrated by a preponderance of the evidence that Plaintiff failed to comply with the PLRA, 42 U.S.C. § 1997e(a). Defendants produced evidence that there was an available administrative remedy and that Plaintiff failed to exhaust it. *Albino*, 747 F.3d at 1172. Plaintiff has failed to demonstrate either that he exhausted, or that the existing and generally available administrative remedies were "effectively unavailable to him." *Id.*

Defendants are entitled to judgment in their favor, and the case will be dismissed.

## V. Conclusion

Based on the foregoing,

**IT IS ORDERED** that on the issue of Plaintiff's exhaustion of available administrative remedies, the Court finds in favor of Defendants and against Plaintiff.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment in favor of Defendants and terminate this case.

Dated this 17th day of August, 2016.

James A. Teilborg
Senior United States District Judge