WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eulandas J. Flowers, | No. CV-14-08184-PCT-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Sandra Lawrence, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff Eulandas J. Flowers' Motion to Amend/Correct the Clerk's Judgment. (Doc. 183). Plaintiff's motion is in response to the Court's August 18, 2016, Order entering judgment in favor of Defendants and terminating the case, (Docs. 175, 176, 177), on the grounds that Plaintiff failed to exhaust his available administrative remedies in accordance with the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) (2012) (the "PLRA"). This finding was premised on evidence presented to the Court during a bench trial held on June 16, 17, and August 2, 2016. Plaintiff takes exception to the Court's finding, and seeks amendment. Having considered Plaintiff's filing, the Court now rules on the motion.[1]

**I.**

---

[1] Plaintiff's motion is not fully briefed. The Court finds, however, that further briefing will not aid its decision regarding the argument that the Court committed clear error in finding that Plaintiff failed to comply with the Arizona Department of Corrections ("ADOC")'s internal grievance procedures, as required to satisfy the PLRA.

Plaintiff's motion seeks post-judgment relief under Federal Rule of Civil Procedure 59(e), a provision enacted to allow litigants to seek substantive change to a judgment entered by the Court.[2] Indeed, the Rule's drafters intended Rule 59(e) to "mak[e] clear that the district court possesses the power to rectify its own mistakes in the period immediately following the entry of judgment." *Maxwell v. Sherman*, 2016 U.S. Dist. LEXIS 61852, at *3 (E.D. Cal. May 9, 2016) (quoting *White v. New Hampshire Dep't of Employment Sec.*, 455 U.S. 445, 450 (1982)).

"Although Rule 59(e) permits a district court to reconsider and amend a previous order, the rule offers an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (citation omitted). "[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error,[3] or if there is an intervening change in the controlling law." *Id.* (quoting *389 Orange Street Partners*, 179 F.3d 656, 665 (9th Cir. 1999)).[4] "A Rule 59(e) motion may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Id.* (emphasis in original).

**II.**

Plaintiff's motion contends that the Court clearly erred in finding that he failed to satisfy the requirements of the PLRA, a theory resting on two arguments. Plaintiff argues

---

[2] The District of Arizona has no local rule for Altering or Amending a Judgment. Fed. R. Civ. P. 59(e) permits a movant to file within 28 days of judgment.

[3] "Clear error occurs when 'the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed.'" *Smith v. Clark County School Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

[4] Plaintiff's motion makes no reference to newly discovered evidence or an intervening change in the controlling law.

that: (1) he utilized all available administrative remedies, and (2) that he should have been represented by counsel at the bench trial. The Court begins by addressing the latter.

**A.     Denial of Plaintiff's Motion to Appoint Counsel**

There is no constitutional right to the appointment of counsel in a civil case. *See Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009); *Johnson v. U.S. Dep't of Treasury*, 939 F.2d 820, 824 (9th Cir. 1991). But the Court may request that counsel represent an indigent civil litigant pursuant to 28 U.S.C. § 1915(e)(1) (2012) under "exceptional circumstances."[5] *Palmer*, 560 F.3d at 970 (quoting *Agyeman*, 390 F.3d at 1103). On May 6, 2016, the Court set the issue of exhaustion under the PLRA for bench trial. (Doc. 116). On May 12, 2016, the Court then denied a pending Motion to Appoint Counsel. (Doc. 117). In this Order, the Court specifically noted that Plaintiff's request deserved close scrutiny, as a disputed material fact existed and the forthcoming bench trial would require Plaintiff to "handle issues of conflicting testimony and credibility on his own." (Doc. 117 at 3). After more closely scrutinizing Plaintiff's request, the Court found both that the structure of the bench trial would allow the Court to "take special precautions to 'avoid undue prejudice to the pro se litigant,'" (*id.* at 4 (citation omitted)), and that Plaintiff had demonstrated ample ability to competently prosecute his own civil case in light of its complexities. (*Id.* at 3). Thus, the "exceptional circumstances that might require appointment of counsel [we]re not present," and Plaintiff's motion was denied. (*Id.* at 4).

Plaintiff's reliance on this basis in support of his pending motion is improper. The Court denied Plaintiff's most recent Motion to Appoint Counsel on May 12, 2016. (Doc.

---

[5] The Court has no power or authority "to make coercive appointments of counsel." *Mallard v. United States District Court*, 490 U.S. 296, 310 (1989). 28 U.S.C. § 1915(e)(1) gives the Court discretion "to 'request' that an attorney represent indigent civil litigants upon a showing of 'exceptional circumstances.'" *Dunsmore v. Paramo*, 2013 U.S. Dist. LEXIS 153656, at *2 (S.D. Cal. Oct. 22, 2013) (citing *Agyeman v. Corrs. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004)).

117). A motion to reconsider this Order pursuant to Local Rule 7.2(g)[6] was due within fourteen days of the Order's issuance. Plaintiff filed no such motion, and did not thereafter renew his efforts to request appointment of counsel. Re-litigation of this issue is both untimely and falls outside of the scope of review of the Court's August 18, 2016, Order. It is not a proper basis to support amending the judgment under Rule 59(e).

Nonetheless, even if the Court were to consider Plaintiff's argument, it is not persuasive. Plaintiff relies primarily on *Solis v. County of Los Angeles*, 514 F.3d 946, 958 (9th Cir. 2008), asserting that because the mechanism of a bench trial was used to adjudicate the issue of exhaustion, Plaintiff needed legal representation as he is "ill-suited to conduct a trial." (Doc. 183 at 4-5). But the court in *Solis* did not hold that the plaintiff was entitled to legal representation. Rather, the Ninth Circuit held that "the district court failed to articulate its reasons for denying" the plaintiff's request for counsel, and remanded for the district court to "reconsider his request," taking into account the fact that the plaintiff was incarcerated, had no legal training, possessed an eighth grade education, and would be required to litigate his case before a jury. *Solis*, 514 F.3d at 958.

Here, the Court provided ample reasoning in its May 12, 2016, Order to support its finding that Plaintiff failed to make the necessary showing to justify a request for counsel under 28 U.S.C. § 1915(e)(1). (*See* Doc. 117 at 2-5). Moreover, the trial at issue in *Solis* was a jury trial, whereas a bench trial was held in the instant matter, allowing the Court to enact appropriate measures to ensure that Plaintiff was not subjected to undue prejudice. And, as the Court noted in the May 12 Order, Plaintiff has demonstrated ample ability to intelligently argue his position in light of the complexity of the legal issues involved. Having observed Plaintiff's conduct during trial, the Court's finding has been bolstered significantly. Plaintiff displayed a keen ability to carry out both direct examination of himself and cross-examination of Defendants' witnesses, he displayed sound knowledge

---

[6] L.R.Civ. 7.2(g)(2) establishes that "[a]bsent good cause shown, any motion for reconsideration shall be filed no later than fourteen (14) days after the date of the filing of the Order that is the subject of the motion."

of the facts of his case, the PLRA, as well as ADOC internal regulations, and he made succinct, cogent arguments in his favor, acquitting himself exceptionally well as a pro se litigant.

Even now—seeking post-judgment relief—Plaintiff has not demonstrated an inability "to articulate his claims pro se in light of the complexity of the legal issues involved." *Palmer,* 560 F.3d at 970 (citation omitted). The "exceptional circumstances," necessary to grant a request under 28 U.S.C. § 1915(e)(1) are not present. Plaintiff's argument is both improper and unpersuasive.

**B.     Satisfaction of Available Administrative Remedies**

Turning to the second argument in support of Plaintiff's Motion to Alter/Amend the Clerk's Judgment, he begins by noting that pursuant to Department Order (DO) 802.01.1.8.1, *Inmate Grievance Procedure*, which governs the ADOC grievance policy, an inmate may submit a verbal or written emergency complaint and is not required to use the formal inmate grievance procedure. (Doc. 183 at 3). Plaintiff further asserts that the evidence at trial established that he made a formal, emergency grievance to Sergeant J. Johnson,[7] in which he alerted Johnson to a "substantial risk of medical harm, personal injury and a serious risk of irreparable harm." (*Id.*). Finally, Plaintiff claims that he also "formally . . . grieved on video" from April 3 through April 5, 2014. (*Id.*). Plaintiff thus contends either that the Court clearly erred in finding that Sergeant Johnson did not lead him to believe he could file a grievance on the provided video camera or, alternatively, that Plaintiff filed an emergency, oral grievance in accordance with ADOC regulations and exhausted his administrative remedies.

The Court is not persuaded by either argument. In the Court's April 25, 2016, Order granting in part Defendants' motion for summary judgment, the Court expressly

---

[7] By the time trial Sergeant Johnson testified at trial, he had been promoted to Lieutenant. Given that all of the events at issue in this matter occurred when he was at the rank of Sergeant, the Court will refer to the witness as "Sergeant" throughout the Order.

noted that "[t]here [was] no dispute that Plaintiff did not properly exhaust his claims to the Director's level as required by the [ADOC's] grievance policy." (Doc. 109 at 12). Thus, the issue at summary judgment was "whether there [was] something particular in this case that made the existing and generally available administrative remedies effectively unavailable to Plaintiff." (*Id.*). With respect to all of Plaintiff's alleged efforts to file a grievance—save for his claim that he was told by Sergeant Johnson that he could file an oral, emergency grievance on video camera between April 2 and April 5, 2014—Defendants were entitled to judgment as a matter of law.

Focusing on Plaintiff's alleged oral grievances on camera between April 2 and April 5, the Court explained that there were several material facts in dispute that necessitated trial to resolve. These facts were "whether Sergeant Johnson told Plaintiff that he could orally file an emergency grievance via videotape while Plaintiff was on defecation watch, whether Plaintiff relied on that alleged assertion to believe that he was properly exhausting and did not need to follow the general grievance process, and whether Plaintiff made such a recording of his grievances relating to his claims of assault and denial of medical care and necessities." (Doc. 109 at 14 n.5). If Sergeant Johnson had reasonably led Plaintiff to (wrongly) believe he could comply with ADOC regulations by speaking into the provided video camera, then that could constitute misinformation from a prison official to an inmate rendering the existing and generally available administrative remedies unavailable to Plaintiff.

In the Court's August 18, 2016, Order, the Court made a negative finding with respect to the first disputed factual issue. Thus, there was no particular fact or circumstance that made the existing and generally available administrative remedies unavailable to Plaintiff between April 2 and April 5.[8] And as there was no dispute between the parties that Plaintiff failed to properly exhaust his claims to the Director's

---

[8] The Court also found CO III Christopher Spears to be a credible witness. Spears testified that he was a daily point of contact with Plaintiff, and that both pencils and grievance forms were available to him, even on defecation watch. (Doc. 109 at 6).

- 6 -

level as required by ADOC's grievance policy, Defendant had carried its burden and established by a preponderance of the evidence that Plaintiff failed to exhaust under the PLRA.

Nothing argued in Plaintiff's post-judgment motion persuades the Court that it clearly erred in finding that Sergeant Johnson did not lead Plaintiff to reasonably believe he could comply with ADOC grievance procedures by utilizing the video camera placed in front of his cell. Plaintiff's principal argument amounts to an invitation to reassess the Court's prior finding.[9] "Rule 59 motions cannot be used to ask the Court 'to rethink what the court has already thought through,'" merely because a [party] disagrees with the Court's decision." *Stejic v. Aurora Loan Servs.*, *L.C.C.*, CV 10-1547-PHX-JAT, 2012 U.S. Dist. LEXIS 37134, at *11 (D. Ariz. March 20, 2012), *rev'd on other grounds by In*

---

[9] Plaintiff relies on *Ross v. Blake*, 136 S. Ct. 1850 (June 6, 2016), in arguing that where prison officials actively act to thwart an inmate's attempts to internally resolve a grievance or fail to provide relief to aggrieved inmates, a prisoner may be found to have exhausted all those administrative remedies *available* to him, satisfying the PLRA. (Doc. 183 at 4). Plaintiff's argument is not persuasive. In *Ross*, the Supreme Court embarked on a lengthy discussion of the inflexible nature of the PLRA, noting that the statute's language is "mandatory," and recognizing that the Supreme Court has "reject[ed] every attempt to deviate . . . from its textual mandate." 136 S. Ct. at 1856-57. But the statute also "contains its own textual exception to mandatory exhaustion," as the "exhaustion requirement hinges on the 'availability' of administrative remedies." *Id.* at 1858 (quoting 42 U.S.C. § 1997(e)(a)). Though not an exhaustive list, there are three general sets of circumstances that can render administrative relief unavailable, such as: (1) where the administrative procedure "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates," (2) where an administrative scheme is "so opaque that it becomes, practically speaking, incapable of use," and (3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1858-60 (citations omitted). At issue in this case—and resolved at trial—was whether evidence existed to establish that Sergeant Johnson disseminated misinformation to Plaintiff by telling him he could use the supplied video camera to file a grievance, thereby rendering the acceptable administrative relief unavailable to Plaintiff. As this Court previously found, it did not. Plaintiff now seeks reconsideration of this finding, but has not advanced any argument beyond asking the Court to take a second look at the evidence. Such an argument is insufficient to establish clear error and carry a Rule 59(e) motion.

*re Mort. Elec. Registration Sys.*, 754 F.3d 772, 797 (9th Cir. 2014) (quoting *U.S. v. Bus. Recovery Servs.*, *LLC*, No. CV 11-390-PHX-JAT, 2011 U.S. Dist. LEXIS 119973 (D. Ariz. Oct. 17, 2011)). Such a disagreement "should be dealt with in the normal appellate process." *Stejic*, 2012 U.S. Dist. LEXIS 37134, at *11 (citation omitted).

But, as noted *supra*, Plaintiff's post-judgment motion makes a second argument. Plaintiff contends that pursuant to DO 802.01.1.8, an inmate may "submit a verbal or written emergency complaint" and need not "use the formal Inmate Grievance Procedure." (Doc. 183 at 2). Thus, Plaintiff appears to assert, *regardless* of whether Sergeant Johnson led him to believe he could use the video camera, he made an emergency complaint pursuant to ADOC's internal regulations, which was captured on camera, and he satisfied the available administrative remedies.

Plaintiff's argument—raised expressly for the first time post-judgment—is arguably improper, as it stretches to the limit the appropriate scope of reconsideration of the Court's prior Order. Whether Plaintiff's statements into the video camera constituted a grievance was conditioned on a finding that (a) Sergeant Johnson led him to reasonably believe he could initiate a grievance via video camera, and (b) Plaintiff relied on Sergeant Johnson's instruction. Whether Plaintiff initiated such an "emergency grievance" was not a separate inquiry presented to the Court, freeing Plaintiff from establishing the aforementioned factual conditions. To the extent that Plaintiff was seeking a factual finding on this issue at summary judgment or at trial, Plaintiff failed to articulate it.[10]

---

[10] Plaintiff's contravening statement of facts does assert that whether he made "numerous oral emergency grievances" from April 1 through April 5 "on video" is a genuine issue of material fact. (Doc. 82 at 1). But Plaintiff then stated that "he had video recorded emergency grievances and written emergency grievances on April 16[] and April 20[], 2014. (Doc. 81 at 2). Plaintiff thereafter argued in opposition to summary judgment that Sergeant Johnson "allowed [him] to orally file an emergency grievance" from April 2 through April 5 which were "video[]taped" on a setup "implemented" by Sergeant Johnson. (*Id.* at 5). Moreover, Plaintiff's declaration—attached in his opposition to Defendants' motion for summary judgment—stated that it was Sergeant Johnson who "brought a video camera" to his cell "to document [his] grievances" because Plaintiff was not allowed to have "writing utensils or grievance forms." (Doc. 82-1 at 16-17). Thus,

- 8 -

Indeed, in the adopted Final Pretrial Order, Plaintiff argued that he "relied on Sgt. Johnson's knowledge of D.O. 802.01.1.8.1 that under the emergency grievance provision" he "would verbally be able to enact an emergency grievance," and *then* that he initiated such a grievance on camera. (Doc. 136 at 3-4).

Nonetheless, even disregarding or ignoring the Court's prior orders and its present concerns—to the extent that the Court must make a separate factual finding—there is no evidence to support Plaintiff's claim that he made an on-camera, oral, emergency grievance under DO 802.01.1.8 between April 2 and April 5 while on defecation watch. ADOC regulations define an emergency condition as one "which, if processed through the normal grievance time frames, would subject the inmate to substantial risk of medical harm, personal injury or cause other serious and irreparable harm." DO 802.01.1.8.1. Testimony at trial described it as applying to "life-threatening situations."

Evidence submitted on June 16 and June 17, 2016, established neither that an emergency condition existed, nor that Plaintiff filed an "emergency grievance" on video

---

Plaintiff's reliance on emergency grievances recorded on video camera from April 2 through April 5 are best understood as an argument that Sergeant Johnson led him to reasonably believe that he could initiate a grievance in such a manner, and that he then actually made what could be constituted as a grievance on camera, as the Court's Order granting in part Defendants' motion for summary judgment explained.

Plaintiff did file a trial brief in response to the contested issue of law whether "between April 2 and April 5, 2014, Plaintiff exhausted his administrative remedies." (Doc. 136 at 5). In his trial brief, Plaintiff contended that he "exhausted his available administrative remedies" by filing an emergency grievance via video camera in accordance with DO 802.01.1.8. (Doc. 129 at 2-4). Defendants denied that Plaintiff's "complaint constituted an emergency condition exempting him" from ADOC's "formal inmate grievance process." (Doc. 136 at 5). But given the disputed issues of material fact and Plaintiff's contention as to how the Court should make factual findings, Plaintiff's assertion that he filed an emergency grievance on video camera is appropriately viewed in context as arguing that the Court should make a favorable finding with respect to the third disputed issue of material fact. Indeed, Plaintiff's trial brief expressly notes that Sergeant Johnson told Plaintiff that he "was not allowed paper or writing utensils" and that he "provided a video camera to allow [P]laintiff to record his emergency grievance" in the "alternative." (Doc. 136 at 2).

camera.[11] On June 30, 2016, the Court issued an Order continuing the bench trial and

---

[11] One of Plaintiff's principal pieces of evidence in support of this claim is the "Information Report" filed by Sergeant Johnson on April 4, 2014. This report followed a conversation that Sergeant Johnson had with Plaintiff, during which Plaintiff "stated that he felt that his treatment . . . was inhumane" and that "he has made up his mind about . . . no longer wanting to live and that he believes that it is just a matter of a couple of weeks from the way he feels before he dies and that he does not want to do anything to prevent that from happening." (Def. Ex. 122). Plaintiff claims this constitutes an emergency grievance. (Doc. 183 at 3). The Court disagrees.

Initially, this is the first time Plaintiff has relied on this "Information Report" (or the preceding conversation with Johnson) to support his claim. Plaintiff did mention the report in his opening statement at trial, but Plaintiff did not advance either the report or conversation in his complaint, his opposition to summary judgment, or the Joint Proposed Final Pretrial Order. Second, the "Information Report" does not bear on the disputed issues of material fact as identified by the Court in its April 25, 2016, Order, or the Joint Proposed Final Pretrial Order, i.e., whether Sergeant Johnson led Plaintiff to reasonably believe that he could use a video camera to initiate the grievance process. The conversation and subsequent report occurred after Plaintiff alleges Sergeant Johnson set up the video camera for him. Third, even considering the "Information Report," its contents do not establish that an emergency condition existed as defined by ADOC regulations, or that Plaintiff declared such an "emergency." Credited testimony at trial described an emergency condition as "life threatening," where "if it was severe, [prison officials] wouldn't leave the inmate even for a minute" and they would "have to maintain a constant visual." (Doc. 146 at 38). This type of incident only occurred once in the nineteen months that CO III Spears "worked in lockdown detention," and it was of the nature that "you just don't leave" and you "stand right there and wait, and . . . get your boss down there and basically notify the world." (*Id.* at 39). This stands in stark contrast to the video evidence presented by Plaintiff at trial. Moreover, although Sergeant Johnson testified that he could not recall whether Plaintiff wished to initiate an emergency grievance during their conversation on April 4, and Johnson left "feeling and thinking" that Plaintiff was "giving [him] cause" to believe that he had "suicidal tendencies," the established protocol would be to place Plaintiff on "suicide watch, which is a continuous watch." (*Id.* at 61). Plaintiff, however, was already on continuous defecation watch, and no evidence showed that if he had initiated the normal grievance procedure he would have been subjected to "substantial risk of medical harm, personal injury or other serious or irreparable harm." Finally, even considering Sergeant Johnson's "Information Report" as a properly filed non-emergency grievance, Plaintiff never appealed the allegedly filed grievance through the Director's level. This was an undisputed fact at summary judgment. (Doc. 109 at 12). And DO 802.01.1.10.1 establishes that "[i]f an inmate does not receive a response" to a grievance, he may "proceed to the next stage of the grievance process" in the same time frame as if he had received a response. Thus, even considering

- 10 -

1 giving Plaintiff "the opportunity to, once again, view the video records on which he
2 purports to have orally filed emergency grievances in early April of 2014." (Doc. 155).
3 Having viewed all portions of the video evidence Plaintiff believes "constitutes a
4 grievance," approximately an hour in total, the Court finds nothing to suggest either that
5 an emergency condition existed or that Plaintiff filed what could be construed as an
6 emergency grievance. To the extent Plaintiff offered testimonial evidence in support of
7 his claim, the Court does not credit the testimony on the issue. The Court's negative
8 credibility finding is based on conflicting evidence in the form of video recordings
9 viewed in Court, and the rationale set forth in the Court's August 18, 2016, Order. (Doc.
10 177). Additionally, CO III Spears—whom the Court has found to be credible—testified
11 that while Plaintiff was on defecation watch, Plaintiff had daily contact with prison staff
12 frequently enough that there were "upwards of 53 times in a 24-hour block that" he could
13 either declare an emergency or seek to initiate the grievance process. Plaintiff was unable
14 to marshal any testimonial support for his claim that an emergency condition existed or
15 that he declared an "emergency" under ADOC regulations.

16 Accordingly, nothing in Plaintiff's motion persuades the Court that in finding that
17 Defendants established by a preponderance of the evidence that Plaintiff failed to comply
18 with the PLRA's requirements, it committed clear error. *Kona Enters.*, 229 F.3d at 890.
19 Plaintiff simply asks the Court "to rethink what the court has already thought through,"
20 which is not an appropriate basis for reconsideration under Rule 59. *Stejic*, 2012 U.S.
21 Dist. LEXIS 37134, at *11 (citation omitted). And even considering Plaintiff's alternative
22 argument—raised post-judgment—that he filed an emergency grievance thereby
23 satisfying the PLRA, the Court makes the factual finding that Plaintiff made no such
24 grievance. It follows that no basis for reconsideration exists, and the Court will deny
25 Plaintiff's motion.

---

the "Information Report" as a grievance, it was not properly exhausted in accordance
with ADOC regulations and does not satisfy the PLRA's requirements. Accordingly,
even considering the April 4, 2014, conversation between Sergeant Johnson and the
report he filed thereafter, Plaintiff's claim fails.

### III.

For the reasons discussed above,

**IT IS ORDERED** that Plaintiff's Motion to Amend/Correct the Clerk's Judgment, (Doc. 183), is **DENIED**.

Dated this 28th day of September, 2016.

James A. Teilborg
Senior United States District Judge